# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8722 | **DATE** | 9/30/2004 |
| **CASE TITLE** | Marilyn O. Marshall vs. Ronald Belda | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The bankruptcy court's order confirming Belda's proposed Chapter 13 plan of reorganization is reversed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 6 |
| | Docketing to mail notices. | | GMA | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 9/30/2004 | |
| | ETV | courtroom deputy's initials | 2004 SEP 30 PM 2:16 | date mailed notice ETV |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 3 0 2004

In re: )
)
**RONALD BELDA,** )
)
    Debtor. )
_____ )
**MARILYN O. MARSHALL, Trustee,** )
) No. 03 C 8722
    Appellant, )
) Judge Rebecca R. Pallmeyer
  v. )
)
**RONALD BELDA,** )
)
    Appellee. )

## MEMORANDUM OPINION AND ORDER

In this case, the court is asked to weigh in on an issue that has divided the bankruptcy courts: whether a Chapter 13 plan may discriminate between payments to cover long-term student loans and payments to other unsecured creditors. Appellant Marilyn O. Marshall, Bankruptcy Trustee, appeals an October 9, 2003 oral ruling and order[1] of the bankruptcy court confirming Debtor Ronald Belda's proposed Chapter 13 plan of reorganization. As part of the plan, Belda proposed that he continue making contractual student loan payments as he had been to the United States Department of Education (the "DOE") in the amount of $68.50 per month. This proposal would not accelerate payment on the student loan or result in full payment of that loan within the period of the plan. It would, however, allow the DOE to recover 62% of its loan during the term of the plan, while Belda's other unsecured creditors would receive only 10% of the amounts owed to them. The Trustee objected that the plan unfairly discriminated among unsecured creditors in violation of 11 U.S.C. § 1322(b)(1). The bankruptcy court disagreed and confirmed the plan, and

---

[1] The order contained a scrivener's error and a corrected order was entered on October 16, 2003.



the Trustee appealed. For the reasons set forth here, the decision of the bankruptcy court is reversed.

## BACKGROUND

The parties agree that there are no factual issues relevant to this appeal and that the court need only decide legal questions regarding the application of 11 U.S.C. § 1322(b)(1) to long-term student loans under 11 U.S.C. § 1322(b)(5). The court will nonetheless provide a brief factual background to place the legal dispute in context. The facts are drawn from the parties' submissions before the bankruptcy court and are assumed true solely for purposes of this appeal.

Belda filed for bankruptcy under Chapter 13 of the Bankruptcy Code on May 20, 2003. On September 2, 2003, he filed an amended plan of reorganization proposing, among other things, that over the 60-month term of the plan, he would make monthly student loan payments to the DOE in the amount of $68.50.[2] As a result, Belda would pay $4,110.00 of the DOE's $6,661.09 general unsecured claim – an approximately 62% dividend. Because student loans are not dischargeable in bankruptcy,[3] Belda would pay the remaining $2,551.09 owed to the DOE after the plan term

---

[2] There is some confusion as to the actual amount of the monthly payment. Belda indicates that he proposed paying $62 per month, a figure the bankruptcy court adopted in her October 9, 2003 ruling. (Appellee Br., at 2; Tr. at 3.) The Trustee, consistent with Schedule J of the amended plan, states that the proposed payment was $68.50 per month. (Appellant Br., at 2; Schedule J. Current Expenditures of Individual Debtor(s) - Amended.) The court finds the distinction irrelevant to this appeal and assumes for purposes of this opinion that Belda proposed a payment of $68.50 per month as stated in the Schedule J. Further, although the record is unclear on this matter, the court understands that Belda had been making these monthly payments regularly before filing his petition in bankruptcy and that his plan is not an effort to pay arrearages.

[3] Section 523(a)(8) of the Bankruptcy Code provides:

A discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt – (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

ended, also in monthly payments of $68.50. All other general unsecured creditors would receive a dividend of not less than 10% of their claims out of monthly payments totaling $2,022.00. If, however, Belda paid all general unsecured creditors, including the DOE, equally, each would receive a dividend of approximately 35%. In the case of the DOE, that would amount to $2,331.38 during the life of the plan.

The Trustee objected to the plan, arguing that it violated § 1322(b)(1)'s prohibition against unfair discrimination:

> the [Chapter 13] plan may – (1) designate a class or classes of unsecured claims . . . but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1). According to the Trustee, it was unfairly discriminatory to pay the DOE 62% of its claim while paying other unsecured creditors only 10% of their claims.

Belda responded that § 1322(b)(1) does not apply to his student loan because it constitutes a long-term debt under § 1322(b)(5). Under that provision,

> the [Chapter 13] plan may – (5) notwithstanding paragraph (2)[4] of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). Belda observes that Congress intended Chapter 13 debtors to emerge from their plans debt-free, but student loans must always be paid in full. If Belda were to pay a

---

11 U.S.C. § 523(a)(8).

[4]    Paragraph (2) of the subsection states:

the plan may – (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

3

smaller portion of the DOE's claim, he contends, he "would have to win a small lotto to pay the remaining balance of his student loan [at the conclusion of the plan] as it will accumulate over the years as the Debtor makes his payments to the Chapter 13 Trustee." (Debtor's Response to Trustee's Objection to Confirmation, at 5.) If § 1322(b)(1) did apply, Belda argued, the bankruptcy court needed to hold a hearing to determine whether the differential treatment of the DOE and the other unsecured creditors was "unfair." Belda proposed that the test should be whether the other unsecured creditors "[were] to receive as much as [they] would have received in a Chapter 7 bankruptcy." (*Id.* at 7.) Presumably, Belda believes that the unsecured creditors will receive at least as much under his plan as they would have received had he filed for bankruptcy under Chapter 7.

The bankruptcy court held that § 1322(b)(1) does not limit § 1322(b)(5) and that the two provisions "are free-standing entitlements." (Tr. at 6, 7) (citing *In re Benner*, 156 B.R. 631 (Bankr. D. Minn. 1993), and *In re Chandler*, 210 B.R. 898 (Bankr. D.N.H. 1997).) The bankruptcy court found it significant that Belda was not seeking to accelerate payments under his student loan or to pay it off in full during the term of the plan; instead, he merely wanted to maintain his regular monthly payments. As Judge Doyle observed, "[m]any courts have acknowledged that this is entirely permissible under Section 1322(b)(5) and have applied the unfair discrimination test only when the debtor seeks not only to pay the regular monthly payments and arrearages but also to pay off the entire loan." (Tr. at 7) (citing *In re Groves*, 39 F.3d 212, 215 (8th Cir. 1994)) (noting that plans proposing 100% payment on student loans during the life of a plan of reorganization versus "at best, 40%" repayment of other unsecured claims "more than overbalance[d] the debtors' desire for a clean slate as against fairness to their general unsecured creditors").

In reaching this conclusion, the bankruptcy court distinguished the Seventh Circuit's opinion in *In re Crawford*, 324 F.3d 539 (7th Cir. 2003). The debtor in *Crawford* proposed paying two-thirds of his child support obligation which, like student loans, is not dischargeable in bankruptcy, and

4

nothing to his other unsecured creditors. *Id.* at 541. *See also* 11 U.S.C. § 523(a)(5)(A). The bankruptcy and district courts both refused to confirm the plan as unfairly discriminatory under § 1322(b)(1). The Seventh Circuit first rejected all of the tests for unfairness that had been articulated by other courts, stating:

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion).

*Id.* at 542. The court recognized that nonpayment of child support is a serious matter and that such payments may be separately classified under § 1322(b)(1), but it also noted that "Chapter 13 is designed for the protection of creditors as well as debtors." *Id.* at 543, 544. The court held that the bankruptcy court did not abuse its discretion in rejecting the debtor's plan because he had provided no reasonable basis for "shift[ing] two-thirds of his nondischargeable debt to his other creditors, leaving them with nothing." *Id.* at 544.

In *dicta*, the Seventh Circuit suggested that a reasonable basis for such discrimination might exist where a plan seeks to "carve-down" the debtor's nondischargeable debt upon a showing that doing so is necessary to avoid "a crushing load of undischarged debt [that would] make it inevitable or nearly so that he would soon be back in the bankruptcy court, this time under Chapter 7." Under such circumstances, the court said, it would presumably affirm the proposal, "especially if the unsecured creditors would do worse in Chapter 7 than they would do under [the debtor's] revised Chapter 13 plan." *Id.*

In distinguishing *Crawford* from this case, the bankruptcy court noted that *Crawford* did not deal with a student loan or with § 1322(b)(5); "there were no arrearages to cure and no continuing

long-term payments to be made." (Tr. at 9.)[5] In the bankruptcy court's view, "[t]he fact[s] of *Crawford*, a debtor attempting to pay most of the non-dischargeable debt while giving the rest of his creditors absolutely nothing are egregious and are not analogous to the facts in this case." (*Id.*) Even if § 1322(b)(5) did apply in this case, the bankruptcy court stated, Belda would find himself in financial trouble were he not allowed to continue his payments to the DOE:

> [I]f he does not maintain his current payments to the department of education, he will be liable upon completion of his case for a substantial lump sum of past due payments. The lender would be free to initiate collection proceedings, thereby eliminating in large part the fresh start to which the debtor is entitled in bankruptcy.

(Tr. at 10.) In addition, the creditors "will receive the same return as they would in a Chapter 7 case, if not more." (Tr. at 11.) The bankruptcy court found the differential treatment reasonable and confirmed Belda's plan.

## DISCUSSION

### I. Standard of Review and Jurisdiction

This court has subject matter jurisdiction over the Trustee's appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). The district court functions as an appellate court when reviewing bankruptcy court decisions. *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995) (citing FED. R. BANKR. P. 8013). In a bankruptcy appeal, the court examines the "bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). The parties in this case raise exclusively questions of law, which the court will review *de novo*.

This case presents the question whether long-term student loan payments under § 1322(b)(5) are subject to the unfair discrimination limitations of § 1322(b)(1) and, if so, whether Belda's proposed plan is "fair." The Seventh Circuit has not yet addressed this issue and

---

[5] As noted earlier, the court remains uncertain whether there are arrearages on Belda's student loan here.

bankruptcy courts are split. The Trustee argues that a Chapter 13 plan cannot discriminate as between payments to cover student loans and payments to cover debt owed to other unsecured creditors, and that Belda's proposed plan is "unfair" because it does just that. Belda claims that § 1322(b)(1) is inapplicable and that, in any event, his plan does not violate that provision.

II.     **Discrimination in Favor of Student Loans**

Student loans were dischargeable under Chapter 13 until 1990, when Congress amended the Bankruptcy Code to make them nondischargeable. See *McCullough v. Brown*, 162 B.R. 506, 508 (N.D. Ill. 1993) (Shadur, J.) Section 1322(b)(5), which addresses long-term nondischargeable debt, was traditionally used by debtors as a means of curing home mortgage defaults, but it has also been applied in the context of student loans. See *In re Coonce*, 213 B.R. 344, 345 n.2 (Bankr. S.D. Ill. 1997). Section 1322(b)(1) permits separate classification of unsecured claims as long as the proposed discrimination is fair. *Crawford*, 324 F.3d at 541; *Coonce*, 213 B.R. at 345-46. As noted, there is currently a split of authority as to whether student loan payments that qualify for § 1322(b)(5) treatment are also subject to § 1322(b)(1)'s prohibition against unfair discrimination.

In the case of *In re Chapman*, 146 B.R. 411 (Bankr. N.D. Ill. 1992) (Ginsberg, J.), a case not addressing § 1322(b)(5), the debtor sought to pay off his student loans in full during the term of the plan while paying other unsecured creditors, except those with claims to co-signed debts, only 10% of their claims. *Id.* at 412. The bankruptcy court held that "there is no reasonable basis for the debtor to discriminate against the general unsecured claims class by paying the student loan class in full while paying the general unsecured claims class only ten percent." *Id.* at 417. The bankruptcy court reasoned that it "would be clearly unfair" to allow the debtor to "equitably subordinat[e] 90% of the claims of those creditors holding dischargeable claims to the nondischargeable student loans." *Id.* at 418. This conclusion, the bankruptcy court stated, was bolstered by the fact that in making student loans nondischargeable, Congress did not afford them

7

any special treatment or make them a priority in Chapter 13. In addition, § 1322 is intended as a "creditor protection device," but, as the court observed, only the debtor (and the student loan creditors) derived any benefit from the proposed discrimination. *Id.* at 419.

The Eighth Circuit reached a similar conclusion in *Groves*, in which a plan proposed to fully repay student loans over the life of the plan but to provide just 10-40% repayment for other unsecured claims. 39 F.3d at 214. The court rejected the notion that discriminating in favor of student loans was "fair" based on Congress' intent that they be repaid in full and that debtors obtain a "fresh start" after bankruptcy. *Id.* at 215. Unlike child support obligations, the court stated, public policy does not dictate full payment of student loans during the life of the plan. In addition, the fact that the debtors may emerge from bankruptcy with a continuing obligation "may be the result envisioned by Congress in . . . mak[ing] student loans nondischargeable in a Chapter 13 case." *Id.* Thus, the court agreed with the bankruptcy court that the debtor may avoid discrimination by paying student loan creditors pro rata with other unsecured creditors, or by "treat[ing] the student loan obligation as a long term indebtedness under § 1322(b)(5), curing arrearages within a reasonable time and thereafter maintaining regular payments." *Id.* As for the debtor's claim that unsecured creditors would have received nothing had she proceeded under Chapter 7, the court found it "irrelevant whether or not there exists an undesirable end-run around an otherwise correct ruling." *Id.*

Other courts have found that debtors are allowed to discriminate in favor of student loans as long as they are not attempting to accelerate the loan payments. In *Benner*, for example, the debtors proposed paying the outstanding balance of a student loan debt to the Higher Education Assistance Foundation ("HEAF") outside the plan, while curing the arrearages on the loan within the plan. HEAF would therefore receive 57% of its claim during the plan period, whereas other unsecured creditors would receive 5% of their claims. 156 B.R. at 632. The bankruptcy court found that this proposal was not unfairly discriminatory in violation of § 1322(b)(1). First, the court

8

held, a debtor's interest in receiving a fresh start and emerging from bankruptcy without substantial nondischargeable debt provided a reasonable basis for discriminatory classification. *Id.* at 634. In addition, by making student loans nondischargeable, Congress demonstrated an intent that such debts be paid in full. Significantly, the plan merely sought to cure arrearages within the plan, and not to accelerate or pay off the entire loan. *Id.* at 634-35.

The debtors in *In re Cox*, 186 B.R. 744 (Bankr. N.D. Fla. 1995), similarly proposed paying off student loans outside of the Chapter 13 plan, and giving other unsecured creditors an 18% dividend on their claims. *Id.* at 745. In reaching its decision to confirm that plan, the bankruptcy court began by expressing disagreement that student loans could be treated differently merely because they are nondischargeable. While recognizing that courts have allowed such differential treatment with respect to child support payments, the bankruptcy court found nondischargeable student loans distinguishable because "[t]he federal government's need for the repayment of student loans, while an important policy objective, does not approach a family's need for the immediate payment of alimony or child support obligations." *Id.* (citing *Groves*, 39 F.3d at 215). Citing *Benner*, the bankruptcy court noted that the debtors in *Cox* were not trying to accelerate the loans and would not pay them off during the life of the plan. The bankruptcy court thus concluded that the proposed payment plan was not unfairly discriminatory because § 1322(b)(5) expressly provides for the curing of such long-term debt. *Id.* at 746. *Compare In re Strickland*, 181 B.R. 598 (Bankr. N.D. Ala. 1995) ("[i]t will be this Court's policy to allow nondischargeable student loans to be paid as a general unsecured creditor on a pro rata basis for the first 36 months of the plan. The remaining 24 months of the plan may be devoted solely to the payment of the student loan").

The following year, a Maryland bankruptcy court rejected plans calling for 100% repayment of student loans and pro rata distributions to all other unsecured creditors representing approximately 10% of their claims. *In re Kolbe*, 199 B.R. 569, 570 (Bankr. D. Md. 1996). The bankruptcy court reviewed several tests for "unfair" discrimination under § 1322(b)(1) and adopted

9

a five-factor approach set forth in *In re Husted*, 142 B.R. 72, 74 (Bankr. W.D.N.Y. 1992).[6] *Id.* at 572, 574. Applying those factors, the bankruptcy court stated that while the debtors' inability to fully repay the student loans would undermine their fresh start, "the nondischargeability of student loan debts possesses a statutory preference over an unfettered fresh start." *Id.* at 575. The bankruptcy court was not persuaded that the plans were necessary to insulate the debtors from "the same governmental collection methods that originally caused them to file for bankruptcy." *Id.* In the bankruptcy court's view,

> [i]t is likely that other plans can be developed to pay the other unsecured creditors a higher percentage than what has been proposed by both debtor[s]. Alternatively, debtors have not shown that a repayment default on the student loans could not be cured through the plan. 11 U.S.C. § 1322(b)(5).

*Id.*

In *Coonce*, a case more factually similar to this one, the debtors' plan proposed that they pay student loan creditors 33.1% of their claims and pay other unsecured creditors 10.56% of their claims. 213 B.R. at 345 n.1. Like the *Cox* court, the *Coonce* court believed that the student loans were not dischargeable was insufficient to justify granting them preferential treatment: "Chapter 13 debtors['] . . . strong interest in reducing obligations in their plans . . . should not be advanced at the expense of their other unsecured creditors." *Id.* at 346. That the student loans constituted long-term debt under § 1322(b)(5) similarly did not alone justify a conclusion that the classification was "fair" discrimination.

> Taken to its logical conclusion, such an interpretation would require that any designation or plan provision made pursuant to a subsection of § 1322(b) would be *per se* exempt from the "fair discrimination" requirement of § 1322(b)(1). Obviously, this was not Congress' intent when it drafted § 1322(b).

*Id.* at 347.

---

[6] The *Crawford* court specifically rejected *Kolbe*'s five-factor approach. 324 F.3d at 542.

The bankruptcy court found it significant that Congress chose not to make student loans an exception to § 1322(b)(1) when it amended § 1328(a)(2) of the Bankruptcy Code to make educational loan obligations nondischargeable in Chapter 13 cases.

> Under the doctrine of *inclusio unius exclusio alterius* (the inclusion of one is the exclusion of another), § 1322, by specifically providing for co-signed consumer debts to be treated separately from other unsecured claims without regard to unfair discrimination, does not allow any other kinds of unsecured claims, including student loans, to be so treated unless such discrimination is fair.

*Id.* at 348. The bankruptcy court also stated that separate classification of student loans based solely on their duration could produce "anomalous results."

> For example, a student loan with thirty-six monthly payments remaining could not qualify under § 1322(b)(5) and, therefore, would have to be classed with all of the other unsecured creditors. However, an identical obligation with thirty-seven monthly payments remaining would be entitled to full payment under the plan without any inquiry as to whether the proposed treatment was fair.

*Id.* Applying these theories to the facts of the case, the bankruptcy court held that "§ 1322(b)(1) prohibits unfair discrimination even when it appears in the guise of treatment of long-term debt under § 1322(b)(5)." *Id.* But see *McCullough*, 162 B.R. at 510 ("debtors could almost always design plans that do not discriminate" by "simply . . . treat[ing] student loans as long term debt under Section 1322(b)(5)"). The *Coonce* noted that a debtor's fresh start must be balanced against the creditors' right to fair treatment, and found that the debtors in that case could formulate a nondiscriminatory plan that paid the student loan creditors on a pro rata basis with other unsecured creditors during the life of the plan and as a continuing obligation thereafter. *Id.* at 349. See also *In re Caruso*, No. 00-84200, 2001 WL 34076052 (Bankr. C.D. Ill. July 16, 2001) (following *Coonce* to reject as unfairly discriminatory a plan that proposed to pay student loan creditor 50% of its claim while paying other unsecured creditors 2% of their claims).

A New Hampshire bankruptcy court took a contrary view in *In re Chandler*, 210 B.R. 898 (Bankr. D.N.H. 1997). The debtors in *Chandler* proposed that they continue to pay the required monthly contractual obligations on student loans outside the Chapter 13 plan, and pay other

11

unsecured creditors some lesser percentage of their claims. *Id.* at 900. The bankruptcy court determined that the proposal did not violate § 1322(b)(1):

> The Court holds that placing unsecured creditors, like those holding student loans, into a separate class and permitting debtors to maintain their payments to them at the full contract rate, as expressly permitted by section 1322(b)(5), is not "unfair" discrimination. This must be the result intended by Congress; otherwise, how could a debtor's plan provide for the "maintenance of payments" on "unsecured" claims under section 1322(b)(5) if it were considered "unfair discrimination" under section 1322(b)(1). In order to give meaning to both subsections, the Court finds that the discrimination proposed by the debtors in this case is not unfair.

*Id.* at 904. The bankruptcy court stated that debtors may not "accelerate payments or make any payment other than those necessary to cure defaults and keep current on the loan in accordance with the statute." *Id.*

More recently in *In re Colley*, 260 B.R. 532 (Bankr. M.D. Fla. 2000), the bankruptcy court considered a plan that would pay a student loan creditor (Intuition, Inc.) 36% of its claim over the 36-month plan term, and pay other unsecured creditors 2% of their claims. *Id.* at 534. The bankruptcy court noted that a minority of courts (e.g., *Benner*, *Cox*) exempted § 1322(b)(5) student loans from the limitations of § 1322(b)(1). *Id.* at 535-36. Following what it characterized as the "majority" view articulated in *Coonce*, however, the bankruptcy court held that student loans qualifying as long-term debt under § 1322(b)(5) must not discriminate unfairly against other unsecured creditors. *Id.* at 536-38. *Colley* went so far as to say that even a 1% difference between the amount of debt recovered by a student loan creditor and the amount recovered by unsecured creditors is improper, as "[t]here is no *de minimis* exception to § 1322(b)(1). *Id.* at 540-41.

Finally, in *In re Labib-Kiyarash*, 271 B.R. 189 (B.A.P. 9th Cir. 2001), the debtor proposed to continue making direct contractual payments to four student loan creditors as long-term debts under § 1322(b)(5). Over the life of the plan, those four creditors were to divide payments totaling $11,400 (a 42% to 100% dividend) while the other unsecured creditors were to divide payments totaling only $3,000 (a 3% dividend). *Id.* at 190-91. The bankruptcy court sustained the trustee's

objection to the plan on the grounds of unfair discrimination. The Bankruptcy Appellate Panel agreed that § 1322(b)(1) applied to the long-term student loans, but reversed the bankruptcy court's ruling for failure to first apply the Ninth Circuit's test for determining whether a special classification is unfair discrimination. *Id.* at 191 (referring to *In re Wolff*, 22 B.R. 510 (B.A.P. 9th Cir. 1982)). The court held that "a debtor may use § 1322(b)(5) to maintain long-term student loan payments at the contract rate while curing any arrearage through the plan, provided that the debtor's plan satisfies the *Wolff* test for unfair discrimination under § 1322(b)(1)."[7] *Id.* at 195.

Although the matter is not free from doubt, this court finds the reasoning set forth in *Coonce* and *Colley* persuasive and concludes that student loans constituting long-term debt under § 1322(b)(5) must comply with § 1322(b)(1)'s prohibition against unfair discrimination. As for the proper test for determining "fairness," the Seventh Circuit has instructed that "at least provisionally, . . . this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion)." *Crawford*, 324 F.3d at 542. Thus, the court must consider whether the bankruptcy court's decision to uphold Belda's proposed plan was unreasonable.

III.   Belda's Plan

Belda's plan is similar to the ones proposed in *Coonce*, *Colley*, and *Labib-Kiyarash* in that it involves paying a 62% dividend on his student loans but paying other unsecured creditors only 10% of their claims. Belda is not seeking to accelerate his student loan and will not pay it off in full during the term of the plan. *Cf. Chapman*, 146 B.R. at 412; *Groves*, 39 F.3d at 214. Nevertheless,

---

[7] The *Crawford* court, while not expressly mentioning *Wolff*, rejected a similar four-part "unfairness" test set forth in *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991). *See Wolff*, 22 B.R. at 512.

the plan clearly discriminates in favor of the DOE. The bankruptcy court determined that the discrimination was not unfair because "[i]f Debtor does not maintain his current monthly payments owed to the Department of Education he will be liable upon completion of his Chapter 13 plan for a substantial lump sum of past due payments. The lender would be free to initiate collection proceedings, thereby eliminating in large part the fresh start to which the debtor is entitled in bankruptcy." (Tr. at 10.)[8] In support of this conclusion, the bankruptcy court cited *Crawford*, in which the Seventh Circuit suggested that it would "presumably" affirm a plan to "carve-down" the debtor's nondischargeable debt upon a showing that it was necessary to avoid "a crushing load of undischarged debt [that would] make it inevitable or nearly so that he would soon be back in the bankruptcy court, this time under Chapter 7." 324 F.3d at 543. The bankruptcy court also noted, without elaboration, that the unsecured creditors "will receive the same return as they would in a Chapter 7 case." (Tr. at 11.)

The court respectfully disagrees that Belda has shown the requisite "crushing load of undischarged debt" in this case. Belda owes a total of $6,661.09 to the DOE. If he makes full contractual payments during the term of the plan, he will reduce his debt by $4,110.00 and owe the DOE $2,551.09 at the end of the plan. If, on the other hand, he pays the DOE a pro rata share of his monthly payments, he will reduce his debt by $2,331.38 and owe the DOE $4,329.71 at the end of the plan. Belda has not provided any basis for concluding that the difference between the two results ($1,778.62) is so great as to render the $4,329.71 debt "crushing."

Though the Bankruptcy Code seeks to provide debtors with a fresh start, that must be balanced against the rights of creditors, which are paramount under § 1322(b)(1). *See Crawford*, 324 F.3d at 542 ("Chapter 13 is designed for the protection of creditors as well as debtors");

---

[8] Although there is no evidence concerning this matter, the court views it as unlikely that upon completion of the plan, the DOE would initiate a collection action against a debtor who had been making regular, albeit reduced, payments on his student loan.

14

*Coonce*, 213 B.R. at 349 ("§ 1322(b)(1) is essentially a creditor protection device [and] any proposed classification should be viewed from the perspective of the creditors being discriminated against"). The mere fact that Belda will not emerge from bankruptcy debt-free cannot justify the discrimination in this case; indeed his own plan contemplates that he will still owe money on his student loan after the plan expires. In addition, an equitable plan that paid all unsecured creditors 35% on their claims would still assist Belda in "carving-down" his nondischargeable debt. The bankruptcy court does not explain how the unsecured creditors will receive "the same return" under Belda's plan as they would under Chapter 7. In any event, as the *Groves* court noted, Belda's ability to file for Chapter 7 protection may not be a relevant consideration. 39 F.3d at 215 ("it is irrelevant whether or not there exists an undesirable end-run around an otherwise correct ruling"). On these facts, the court does not find a reasonable basis for confirming Belda's discriminatory proposal.

## CONCLUSION

For the reasons stated above, the bankruptcy court's order confirming Belda's proposed Chapter 13 plan of reorganization is reversed.

ENTER:

Dated: September 30, 2004

REBECCA R. PALLMEYER
United States District Judge

15